**MARR JONES & WANG**
A LIMITED LIABILITY LAW PARTNERSHIP

CHRISTOPHER J. COLE          5781-0
Pauahi Tower
1003 Bishop Street, Suite 1500
Honolulu, Hawaii 96813
Tel. No. (808) 536-4900
Fax No. (808) 536-6700
ccole@marrjones.com

Attorney for Defendant
AUDIO VISUAL SERVICES, GROUP,
LLC DBA PSAV

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NATALIE WILSON,<br><br>        Plaintiff,<br><br>vs.<br><br>AUDIO VISUAL SERVICES GROUP, LLC DBA PSAV; RUSSELL HOAG; and DOE DEFENDANTS 1-25,<br><br>        Defendants. | CIVIL NO. _____<br><br>DEFENDANT AUDIO VISUAL SERVICES GROUP, LLC'S NOTICE OF REMOVAL; DECLARATION OF DEBORAH KLEIN, EXHIBITS 1-2; EXHIBIT 3; CERTIFICATE OF SERVICE |

**DEFENDANT AUDIO VISUAL SERVICES
GROUP, LLC'S NOTICE OF REMOVAL**

TO:    THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAI'I, PLAINTIFF NATALIE WILSON, AND HER ATTORNEY OF RECORD

1298462/2382.001

Defendant Audio Visual Services Group, LLC, d/b/a PSAV (hereinafter "PSAV"), by and through its undersigned attorneys and pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 and Rule 81(c) of the Federal Rules of Civil Procedure, hereby provides notice of the removal of Case No. 1CCV-20-0001485 from the Circuit Court of the First Circuit for the State of Hawai'i to the United States District Court for the District of Hawai'i. Removal is based on 28 U.S.C. §§ 1332 and 1441, and the procedural requirements for removal have been satisfied. Removal of this action is based on the following facts:

## I.  The Parties

1.    On November 2, 2020, Plaintiff Natalie Wilson (hereinafter "Plaintiff") filed this action against Defendants Audio Visual Services Group, LLC d/b/a PSAV; Russell Hoag; and Doe Defendants 1-25 in the Circuit Court of the First Circuit for the State of Hawai'i entitled *Natalie Wilson v. Audio Visual Services Group, LLC, Russell Hoag, and Doe Defendants 1-25*, Case No. 1CCV-20-0001485.

2.    A copy of the Complaint and Summons was served on PSAV's authorized agent, CT Corporation, on November 4, 2020. Exhibit 3. No other pleadings have been delivered to PSAV. Upon information and belief, Defendant Hoag has not been served as of the date of the filing of this Notice of Removal.

3.    Plaintiff alleges that she is an individual who, at all times material to the allegations in her complaint, resided in the City and County of Honolulu, Hawai'i

and that she currently resides in Hilo, Hawai'i. (Complaint, ¶ 1). PSAV is therefore informed and believes that Plaintiff is a citizen and resident of the State of Hawai'i.

1.    At the time the Complaint was filed and served on PSAV, and as of the date of this Notice of Removal, PSAV was (and is) a Delaware limited liability company.[1] (Declaration of D. Klein, ¶¶ 3-5). PSAV's principal place of business is located at 5100 North River Road, Suite 300, Schiller Park, Illinois 60176. (Declaration of D. Klein, ¶ 6). As such, PSAV is a citizen of the states of Delaware and Illinois for diversity purposes. *See Hertz v. Friend*, 559 U.S. 77, 91, 130 S. Ct. 1181, 1192 (2010) (a corporation's place of citizenship "should normally be the place where the corporation maintains its headquarters."). Thus, PSAV is completely diverse from the Plaintiff for diversity jurisdiction purposes. *See* 28 U.S.C. § 1332(a)(1) (diversity of citizenship exists for jurisdictional purposes where the action "is between . . . citizens of different states").

4.    Plaintiff states in her Complaint that Defendant Russell Hoag is and was a resident of the City and County of Honolulu, Hawai'i. (Complaint ¶ 1).

**II.    Plaintiff's Effort to Destroy Diversity by Adding Defendant Hoag Should be Rejected as Hoag is a Sham Defendant, Fraudulently Joined in this Action.**

---

[1] PSAV's LLC membership is detailed in the attached Declaration of Deborah Klein. All members of PSAV are also diverse from Plaintiff.

5.     There is complete diversity between PSAV and Plaintiff, and this diversity jurisdiction permits the removal of this action to this Court. Plaintiff's effort to avoid removal by joining Defendant Russell Hoag (hereinafter "Hoag") should be rejected because Hoag is a sham defendant, fraudulently joined in this litigation.

6.     Although  the filing of a Notice of Removal under 28 U.S.C. §§ 1332(a) and 1441(b) generally requires complete diversity of citizenship at the outset, "one exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined;'" as such, the presence of a defendant who has been fraudulently joined will not defeat diversity jurisdiction. *Adon Construction, Inc. v. Renesola America, Inc.*, 2017 WL 879279, at *5 (D. Haw. Mar. 6, 2017) (quoting *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001)).

7.     "A resident defendant is fraudulently joined if a plaintiff states no cause of action against the resident defendant who otherwise destroys diversity, and if 'the failure is obvious according to settled law of the state.'" *Lovell v. Bad Ass Coffee Co. of Hawaii, Inc.*, 103 F. Supp. 2d 1233, 1237 (D. Haw. 2000) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987)). In such a case, a district court may ignore the presence of a fraudulently joined, or sham, defendant for the purpose of establishing diversity. *Weeping Hollow Ave. Trust v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016) (quoting *Morris*, 236 F.3d at 1067, and *McCabe*, 811 F.2d at 1339).

8.      In her Complaint, Plaintiff, a former employee of PSAV, asserts claims against PSAV for discrimination due to her gender and sexual orientation under H.R.S. § 378-2(1), retaliation under H.R.S. § 378-2(2), and slander and libel. (Complaint, First, Second, and Third Claims for Relief). Plaintiff's sole claim against her former co-worker Hoag is for slander and libel. (Complaint, Third Claim for Relief)

9.      Slander and libel are defamation actions. *Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd.*, 100 Haw. 149, 171, 58 P.3d 1196, 1218 (2002) (citing *Runnels v. Okamoto*, 56 Haw. 1, 3, 525 P.2d 1125, 1127 (1974)).[2] The allegations necessary "to successfully maintain a cause of action for defamation [are]: (1) false and defamatory statements; (2) which are published to a third party; (3) for which the defendant is responsible; and (4) which result in harm to plaintiff." *Howard v. Daiichiya-Love's Bakery, Inc.*, 714 F. Supp. 1108, 1114 (D. Haw. 1989); *see also Gonsalves*, 100 Haw. At 171, 58 P.3d at 1218 (the "elements necessary to sustain a claim for defamation" are (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher . . . ; and (4) either actionability of the

---

[2] *See McNally v. University of Hawaii*, 780 F. Supp. 2d 1037, 1058 (D. Haw. 2011) (slander involves the oral communication of defamatory statements, while libel consists of written defamation).

statement irrespective of special harm or the existence of special harm caused by the publication.").

10. However, Plaintiff's Complaint fails to state a cause of action against Hoag for slander and libel (and against PSAV for that matter).

11. First, Plaintiff admits in her Complaint that she engaged in the exact conduct of which Hoag accused her – namely, that she delivered the gift cards to Hoag and another employee to compensate them for work done. (Complaint, ¶¶ 49, 55). A plaintiff's "admission of truth bars his defamation cause of action." *Galatz v. Franscell, Strickland, Roberts & Lawrence*, 95 F.3d 1157 (9th Cir. 1996). Plaintiff's admission that Hoag's allegedly defamatory statement is true negates the first element of her defamation claim, and as such, it is clear that Plaintiff has failed to state a cause of action for slander and libel. *Gonsalves*, 100 Haw. at 171, 58 P.3d at 1218.

12. Second, Plaintiff has not stated a claim for slander and libel because Plaintiff has not alleged, nor can she truthfully assert, that Hoag published the allegedly defamatory statements to a third party. Plaintiff asserts that PSAV and Hoag "made false statements of fact to malign Plaintiff." (Complaint, ¶ 76). Plaintiff does not assert that PSAV or Hoag published the allegedly false statements to any third party, and as such, has not stated a claim for defamation. *See Runnels*, 525 P.2d at 1127 ("for tort liability to lie for either slander or libel the defamation must be

6

communicated to some third party other than the person defamed."). Indeed, and to the contrary, Plaintiff alleges that Hoag defamed Plaintiff to PSAV management and that communication triggered Plaintiff's termination from employment. (Complaint, ¶¶ 48-49).

13.     It is well settled in the employment context that one employee's complaint about a co-worker to his employer does not constitute publication of a false statement to a third party. *See Johnson v. Boeing Company*, 2017 WL 5158312, at *2 n. 1 (W.D. Wash. Nov. 7, 2017) (court dismissed plaintiff's claim against co-worker for defamation, reasoning that because "intracorporate communications are not published for purposes of a defamation claim because the corporation is essentially communicating with itself," plaintiff's allegation that she defamed him when she complained to co-workers about his behavior was insufficient to state a claim for defamation); *see also Dutson v. Farmers Ins. Exch.*, 815 F. Supp. 349, 353 (D. Or. 1993), *aff'd*, 35 F.3d 570 (9th Cir. 1994) (for purposes of a defamation claim, there is "no publication of statements to third parties [when] they [are] made by a corporate employee to another corporate employee during the performance of duties" explaining that "publication of a statement to a third person" was "[a]n essential element of a claim for slander of defamation"); *see Rice v. Comtek Mfg. of Oregon, Inc.*, 766 F. Supp. 1550, 1551 (D. Or. 1990) ("the majority view holds that 'statements made by one corporate employee during the performance of his duties

7

within the hearing only of other corporate employees does not constitute publication'" to support a defamation claim and explaining that publication was "an essential element of the tort of defamation") (quoting *Messina v. Kroblin Transp. Sys., Inc.*, 903 F.2d 1306, 1309 (10th Cir.1990))).

14.    Even if Plaintiff was able to establish a defamation claim, which PSAV disputes, she has failed to state a claim upon which relief can be granted because the speaker's (Hoag's) statement is protected by qualified privilege. Authors of defamatory statements are "protected by a qualified privilege when he or she 'reasonably acts in the discharge of some public or private duty, legal, moral, or social, and where the publication concerns subject matter in which the author has an interest and the recipients of the publication a corresponding interest or duty.'" *Farmer ex rel. Keomalu v. Hickam Fed. Credit Union*, 122 Haw. 201, 224 P.3d 455 (Ct. App. 2010), *as corrected* (Feb. 23, 2010) (quoting *Russell v. American Guild of Variety Artists*, 53 Haw. 456, 460, 497 P.2d 40, 44 (1972)). "An interest which is protected by a qualified privilege is one where (1) the publisher and recipient have a common interest and (2) the communication is of a kind reasonably calculated to protect or further such interest." *Kainz v. Lussier*, 4 Haw. App. 400, 404, 667 P.2d 797, 801 (1983); *see Chow v. v. Alston*, 2 Haw. App. 480, 483 n. 3 (1981) (court found that qualified immunity protected the co-worker's allegedly defamatory statement because the statements, which concerned plaintiff's poor work

performance, were made to protect their common interest in the agency's work); *see also Kraus v. Mgmt. Tech. Servs.*, 1995 WL 433299, at \*9 (D. Haw. Jan. 4, 1994) (qualified privilege protected defendant from slander liability where the defendant/author, who was the plaintiff's supervisor, had a private duty to protect his employer's interests when he discharged plaintiff in front of a co-worker and provided the reasons for termination, and the co-worker, who was taking over the plaintiff's job, had an interest in knowing the deficiencies that led to plaintiff's termination).

15.    PSAV's Code of Conduct explains that "PSAV is committed to conducting its business in strict compliance with all applicable governmental laws, rules and regulations." (Declaration of D. Klein, ¶ 7). The Code of Conduct further explains that:

> Any violation of applicable laws, rules or regulations by a PSAV Team Member, officer or director should be reported immediately to PSAV's General Counsel or another member of PSAV's executive management team or to the PSAV Ethics Hotline.

(Declaration of D. Klein, ¶ 7).

16.    Hawai'i law prohibits employers from compensating employees through any means other than "checks convertible into cash on demand at full face value

9

thereof, by direct deposit into the employee's [bank] account," or voluntarily authorized pay cards.[3] H.R.S. § 388-2(a); H.R.S. § 388-5.7(a).

17.    Hoag reported to PSAV that he was concerned with the way Plaintiff had paid him and a colleague, which was clearly a violation of Hawai'i law. PSAV's Code of Conduct created a duty for Hoag to report such a violation to protect PSAV's legitimate business interests. As such, Hoag's statement concerning Plaintiff's action was qualifiedly privileged and thus protected from liability for defamation. *Kainz*, 4 Haw. App. at 404.

18.    Based on the allegations in Plaintiff's Complaint, it is clear that Plaintiff has failed to state a viable cause of action for defamation against Hoag. Because this is her only claim against Hoag, he is fraudulently joined, and the remaining parties are completely diverse.[4] *Lovell*, 103 F. Supp. 2d at 1237.

### III.    The Matter in Controversy Exceeds $75,000.00.

19. Although Plaintiff does not demand a specific amount of monetary damages in her Complaint, the amount in controversy between Plaintiff and PSAV exceeds

---

[3] The statute also prohibits employers from mandating that an employee be compensated via a pay card. In addition to other requirements, an employer must first provide an employee with specified disclosures before obtaining voluntary consent from the employee. H.R.S. § 388.57(a).

[4] Plaintiff also purports to name unidentified "Doe" defendants in her Complaint. However, 28 U.S.C. § 1441(b)(1) makes clear that "the citizenship of defendants sued under fictitious names shall be disregarded" in determining whether a case may be removed on the basis of diversity jurisdiction.

$75,000.

20. When a complaint fails to establish a sufficiently specific total amount in controversy, a removing defendant must only establish the requisite jurisdictional amount by a preponderance of the evidence. *Gugliemino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007).

21. In determining whether it is more likely than not that the amount in controversy exceeds $75,000, a court can consider: (a) the allegations in the complaint, facts in the removal petition, and any summary judgment-type evidence that is submitted; (b) jury verdicts involving similar allegations and claims; (c) emotional distress damages; (d) punitive damages, if they are recoverable as a matter of law; and (e) attorneys' fees, if they are authorized by statute. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). Where a plaintiff does not specify the amount of damages sought, it is appropriate for the district court to apply "a preponderance of the evidence standard" and estimate whether a plaintiff's "allegations [meet] the requisite $75,000 amount-in-controversy threshold." *Guglielmino*, 506 F.3d at 701 (quoting *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 559 (2005)).

22. Here, Plaintiff seeks the following separate categories of monetary damages: (1) lost income; (2) lost wage earning capacity; (3) compensatory damages for emotional distress, mental anguish, pain, fear, and humiliation; (4) damage to her

11

reputation; (5) general damages; (6) special damages; (7) punitive damages; and (8) attorney's fees and costs. (*See* Complaint, ¶¶ 68, 74, 79, 81, and Prayer for Relief).

### 1.  Lost Income and Lost Wage Earning Capacity

23. When evaluating the amount in controversy, the court may consider both past and future lost wages. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

24.  Plaintiff's annual salary as of her termination from employment effective September 16, 2019 was $88,425.00. (Declaration of D. Klein, ¶ 8). Plaintiff's potential back pay as of the date of this Notice of Removal is $107,805.82. Conservatively estimating a trial date 18 months from now, Plaintiff's potential back pay damages would be $132,637.50. Assuming a two year award of Plaintiff's front pay damages, that amount would be $176,850.00. Such potential damages at issue clearly exceed the $75,000 amount in controversy threshold.

### 2.  Emotional Distress Damages

25. To determine potential emotional distress damages for removal purposes, courts often consider emotional distress damage awards in similar cases. *See Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (evidence of emotional distress awards in similar cases properly considered in determining amount in controversy in an age discrimination in employment case). This Court has held that emotional distress damages in employment discrimination cases can be at least $25,000. *DeAguiar v. Whole Foods Mkt., Inc.*, 2012 WL 5038330, at *4 (D. Haw. Oct. 16,

2012). Further, the Ninth Circuit has affirmed awards for emotional distress damages of even greater values. *See e.g., Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 878 (9th Cir. 2007) (award of $125,000 for emotional distress in a gender discrimination case was affirmed); *see also, Swinton v. Potomac Corp.*, 270 F.3d 794, 801 (9th Cir. 2001) (award of $30,000 for emotional distress damages was reasonable in race discrimination case).

### 3. Punitive Damages and Attorney's Fees

26. Both punitive damages and attorney's fees are recoverable in actions brought under H.R.S. § 878-2. *See* H.R.S. § 378-5(c) ("[i]n any action brought under this part, the court, in addition to any judgment awarded to the plaintiff or plaintiffs, shall allow costs of action, including costs of fees of any nature and reasonable attorney's fees, to be paid by the defendant."); *see also Furukawa v. Honolulu Zoological Soc.*, 85 Haw. 7, 19, 936 P.2d 643, 655 (1997) ("punitive damages are generally available in employment discrimination cases" brought under § 378-2).

27. Punitive damages awards in comparable cases routinely exceed $75,000. *See e.g., Swinton*, 270 F.3d at 801 (punitive damages award of $1,000,000 in race discrimination case was upheld); *see also Lansdale v. Hi-Health Supermart Corp.*, 314 F.3d 355, 359 (9th Cir. 2002) (Ninth Circuit affirmed lower court's award of $200,000 for punitive damages in gender discrimination cases).

28. Courts also routinely award attorneys' fees in excess of $75,000 in

13

discrimination and retaliation cases. *See e.g., Norris v. Sysco Corp.*, 191 F.3d 1043, 1047 (9th Cir. 1999) (award of attorneys' fees in the amount of $247,840 for plaintiff was affirmed); *see also Ware v. Chertoff*, 2008 WL 2653534, at *1 (D. Haw. June 27, 2008), *adopted*, 2008 WL 3349066 (D. Haw. Aug. 12, 2008) (Plaintiff who brought a race discrimination suit against his former employer was awarded $96,434.98 in attorneys' fees).

## IV.   Other Procedural Requirements for Removal Have Been Met

29. PSAV has satisfied all other procedural requirements to remove this case to this Court.

30. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) as it is being filed within 30 days following Plaintiff's service of the Complaint and Summons on PSAV on November 4, 2020.

31. This Court is the proper federal court for the removal of Plaintiff's action. Removal to the U.S. District Court for the District of Hawai'i is appropriate because this Court embraces those cases filed within the venue of the Circuit Court of the First Circuit for the State of Hawai'i, which is where Plaintiff commenced her state court action. *See* 28 U.S.C. § 1441(a) (a state court civil action is properly removed "to the district court of the United States for the district and division embracing the place where such action is pending.").

32. Contemporaneous with this filing, PSAV has filed a copy of this Notice of

14

Removal with the Clerk of the First Circuit Court for the State of Hawai'i and has served a copy on all parties of record as required by 28 U.S.C. § 1446(d).

33. Hoag need not consent to PSAV's removal of this action because he is a sham defendant and has been fraudulently joined. *See United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) ("[a]lthough the usual rule is that all defendants in an action in a state court must join in a petition for removal, the 'rule of unanimity' does not apply to 'nominal, unknown or fraudulently joined parties.'" (quoting *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n. 1 (9th Cir.1988) (internal citations omitted))); *see also Jernigan v. Ashland Oillnc.*, 989 F.2d 812, 815 (5th Cir. 1993) ("as a general rule, removal requires the consent of all co-defendants. In cases involving alleged improper or fraudulent joinder of parties, however, application of this requirement to improperly or fraudulently joined parties would be nonsensical[.]").

34. PSAV's counsel signs this short and plain statement of the grounds for removal pursuant to Rule 11 of the Federal Rules of Civil Procedure.

35. PSAV has not answered or otherwise filed any pleadings in response to the Complaint and does not waive any defenses to Plaintiff's claims or damages.

## V.    Conclusion

36. Based on the foregoing, this Court has original jurisdiction over this action because the matter in controversy exceeds $75,000 and is between citizens of

15

different states. 28 U.S.C. § 1332(a). Accordingly, this action is removable pursuant to 28 U.S.C. § 1441(a).

WHEREFORE, Defendant Audio Visual Services Group, LLC prays the above action now pending against it in the Circuit Court of the First Circuit for the State of Hawai'i be removed therefrom to this Court.

DATED:     Honolulu, Hawaii, December 3, 2020.


*/s/ Christopher J. Cole*
CHRISTOPHER J. COLE

Attorney for Defendant
AUDIO VISUAL SERVICES,
GROUP, LLC DBA PSAV

16